UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN J.[1],                                   Case No. 2:24-cv-461
    Plaintiff,                          Watson, J.
                                                  Litkovitz, MJ.
   vs.

COMMISSIONER OF                    **REPORT AND**
SOCIAL SECURITY,                  **RECOMMENDATION**
    Defendant.

      Plaintiff John J. brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the United States Magistrate Judge for a Report and Recommendation on plaintiff's Statement of Errors (Doc. 12), and the Commissioner's response in opposition (Doc. 14).

**I. Procedural Background**

      On September 4, 2021, plaintiff protectively filed an application for DIB with an amended alleged disability onset date beginning June 30, 2020, due to autism, depression, anxiety, and ADHD. (Tr. 172-77, 395, *see also* Tr. 400). The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* telephone hearing before administrative law judge (ALJ) Jeannine Lesperance. Plaintiff and a vocational expert (VE) appeared telephonically and testified at the ALJ hearing on January 19, 2023. (Tr. 39-68). On February 28, 2023, the ALJ issued a decision denying plaintiff's application. (Tr. 17-38). The Appeals Council denied plaintiff's request for review, making the ALJ's decision final for purposes of judicial review. (Tr. 1–7).

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that

2

the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2026.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since June 30, 2020, [plaintiff]'s amended alleged onset date of disability (20 CFR 404.1571 *et seq.*).
>
> 3. [Plaintiff] has the following severe impairments: autism spectrum disorder, depression, anxiety, and attention deficit hyperactivity disorder (20 CFR 404.1520(c)).
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] find[s] that [plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. He can perform simple and detailed tasks without a production rate pace such as on an assembly line. He can interact frequently with coworkers and supervisors, and occasionally with the public, on matters limited to the straightforward exchange of information, without negotiation, persuasion, or conflict resolution. He can adapt to occasional changes.
>
> [6]. [Plaintiff] is capable of performing past relevant work as a janitor. This work does not require the performance of work-related activities precluded by [plaintiff]'s residual functional capacity (20 CFR 404.1565).
>
> [7]. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from June 30, 2020, [plaintiff]'s amended alleged onset date of disability, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 22-35).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

4

**D. Specific Errors**

On appeal, plaintiff seeks a remand for further proceedings pursuant to Sentence Six of 42 U.S.C. §405(g) on the ground that the administrative record contains new and material evidence since the ALJ denied his application. Specifically, plaintiff contends that the April 14, 2023, statement from Janice L. Craig, M.D., meets the Sentence Six standards of being new and material. (Doc. 12 at PAGEID 994-98). Plaintiff alternatively seeks remand because the ALJ's formulation of the Residual Functional Capacity (RFC) is not based on substantial evidence. (*Id.* at PAGEID 998-1001).

### 1. Sentence Six Remand is Not Warranted.

The Court may remand a case to the Social Security Administration "because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991) (citing *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). A Sentence-Six remand for consideration of additional evidence is warranted only if: (1) there is good cause for the failure to incorporate this evidence into the record at the prior hearing; and (2) the evidence is new and material. 42 U.S.C. § 405(g); *see Melkonyan*, 501 U.S. at 98; *see also Bass II v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

"A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). "New" evidence is evidence that was "not in existence or available to the claimant at the time of the administrative proceeding." *Id.* (quoting *Finkelstein*, 496 U.S. at 626). "Material" evidence is evidence that creates "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if

presented with the new evidence." *Id.* (quoting *Sizemore v. Sec'y of H.H.S.*, 865 F.2d 709, 711 (6th Cir. 1988)). The party seeking remand bears the burden of establishing these remand requirements. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006) (citing *Foster*, 279 F.3d at 357). *See also Glasco v. Comm'r of Soc. Sec.*, 645 F. App'x 432, 435 (6th Cir. 2016) ("Failure to establish any one of these . . . remand elements is fatal to the moving party's request.").

A Sentence-Six remand is not warranted in this case. Plaintiff contends that Dr. Craig's statement is new because it was drafted on April 14, 2023, in response to the ALJ's February 28, 2023 decision. (Doc. 12 at PAGEID 995).

In the Sixth Circuit, "[t]he mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement." *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 725 (6th Cir. 2012). Plaintiff must provide "a valid reason for his failure to obtain evidence prior to the hearing." *Id.* (citing *Oliver v. Sec'y of H.H.S.*, 804 F.2d 964, 966 (1986)).

Dr. Craig characterizes her April 14, 2023 statement as "a rebuttal letter of sorts" which "explains [her] use of progress notes and better describes the extent of John's disabilities and the impact of those on employment." (Tr. 15-16). Dr. Craig clarified that she uses her progress notes to assess plaintiff's functioning and response to medications "compared to his individual abilities," not in comparison to the general non-disabled public. (*Id.*). Dr. Craig noted that her mental status summaries are brief, and do not focus on plaintiff's behaviors, including "many of his symptoms of autism, ADHD, and anxiety," instead focusing on his response to medication and coping strategies for recent events. (*Id.*). Dr. Craig believed that plaintiff's ability to work part-time is dependent upon support from his family and accommodations at work, and she opined that

6

plaintiff's lethargy and anxiety "would make working an 8-hour shift virtually impossible." (Tr. 15). She further describes plaintiff's challenges in interacting appropriately with others, noting the "reference to these issues in progress notes on August 12, 2021, February 17, 2022, and November 3, 2022." (Tr. 16).

Because the information contained in Dr. Craig's "rebuttal letter" was admittedly available to Dr. Craig prior to the ALJ's hearing, it does not meet the legal definition of "new." Even if the letter contained new information, plaintiff has failed to provide a valid reason for his failure to obtain such evidence prior to the hearing to meet the "good cause" requirement.

In addition, Dr. Craig's letter is not "material," in that it does not create a reasonable probability that a different decision would have been reached had the ALJ possessed the letter prior to the hearing. Indeed, the ALJ considered the support plaintiff receives, including family support and workplace assistance, as well as his lethargy, anxiety, and challenges in interacting appropriately with others. (Tr. 27-31). Specifically, the ALJ noted that plaintiff reported that "working full time around other people was impossible for him due to social anxiety and anger management"; that plaintiff has panic attacks "if he gets too stressed"; that he "tended to be very concrete in conversations, which some people interpret as rudeness"; that he has been fired from previous employment because of perceived rudeness and inappropriate "jokes"; (Tr. 27); and that he was found looking at inappropriate pictures of women during a job coaching session (Tr. 28). The ALJ further discussed the support plaintiff receives, including an assistant that provided reminders about required tasks and chores (Tr. 27), cameras that monitor him for safety and to offer additional prompts (*Id.*), parental assistance with cleaning, homecare tasks, and financial management (*Id.*), and a job coaching program (Tr. 28). In addition, the ALJ specifically discussed and relied on the same August 12, 2021 (Exh. 1F/15-18), February 17, 2022 (Exh.

7

4F/2-5), and November 3, 2022 (Exh. 6F/1-11) progress notes that Dr. Craig references in her rebuttal letter. (Tr. 24, 25, 27-28, 29, and 31).

Dr. Craig's rebuttal letter constitutes neither new nor material evidence. Therefore, Sentence Six remand is not warranted.

**2. The ALJ's RFC Determination is Supported by Substantial Evidence.**

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ is charged with the final responsibility in determining a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). *See also Moore v. Astrue*, No. 07-204, 2008 WL 2051019, at *5 (E.D. Ky. May 12, 2008) ("[T]he ALJ is responsible for assessing a claimant's [RFC] by examining all the evidence in the record.") (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)); *Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 647 (6th Cir. 2006)).

The RFC determination includes an evaluation of an individual's subjective symptoms. ALJs must examine "all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms . . . and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record." SSR 16-3p, 2016 WL 1119029, at *2. ALJs also evaluate what the agency formerly termed the "credibility" of a plaintiff's statements about his or her symptoms. *See, e.g.*, *Rogers*, 486 F.3d at 246-49. In March 2016, the agency eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination of an individual's character. . . ." SSR 16-3p, 2016 WL 1119029, at *1 (March 16, 2016) (rescinding and superseding SSR 96-7p). To avoid such mistaken emphasis, this analysis is

8

now characterized as the "consistency" of a claimant's subjective description of symptoms with the record. *See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

A two-step inquiry applies to symptom evaluation. The ALJ first determines if the record contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms. SSR 16-3p, 2016 WL 1119029, at *3; *see also* 20 C.F.R. § 404.1529(a); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). Step two of symptom evaluation shifts to the severity of a claimant's symptoms. The ALJ must consider the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *See* 20 C.F.R. §§ 404.1529(a) and (c); SSR16-3p, 2016 WL 1119029, at *4. In making this determination, the ALJ will consider the following:

> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

An ALJ may not consider only objective medical evidence in determining disability unless this evidence alone supports a finding of disability. SSR 16-3p, 2016 WL 1119029, at *5 ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms."); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9. *See also id.* at *7 (noting that the ALJ "will discuss the factors pertinent to the evidence of record").

At the same time, the ALJ is not required to cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with the record evidence. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) ("[T]he ALJ expressly stated that she had considered [the predecessor to SSR 16-3p], which details the factors to address in assessing credibility. There is no indication that the ALJ failed to do so. This claim therefore lacks merit. . . ."). Further, the ALJ's determination regarding the consistency of a claimant's subjective complaints with the record evidence is "to be accorded great weight and deference. . . ." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y of H.H.S.*,

10

818 F.2d 461, 463 (6th Cir. 1987)).[2]

The ALJ found that plaintiff's medically determinable impairments of autism spectrum disorder, depression, anxiety, and attention deficit hyperactivity disorder (ADHD) could reasonably be expected to cause the alleged symptoms. (Tr. 27). However, according to the ALJ, plaintiff's statements concerning the severity and limiting effects of those symptoms are not entirely consistent with the evidence in the record. (*Id.*).

Plaintiff contends that by focusing on plaintiff's past work, performed part-time in highly structured settings with supports in place, the ALJ undervalued plaintiff's symptom severity in formulating the RFC. (Doc. 12 at PAGEID 998-1001). Specifically, plaintiff argues that the RFC "fails to incorporate the need for breaks, support staff, and prompting that he currently receives" and that "[n]o accommodation was made for his ongoing part[-]time schedule or the absences [about which] plaintiff credibly testified." (*Id.* at PAGEID 1000-01).

The Social Security regulations provide that an individual's "ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [an] ability to complete tasks in the context of regular employment during a normal workday or work week." 20 C.F.R. 404, Subpart P, App'x 1, § 12.00(C)(6)(b). The ALJ "must assess [the individual's] ability to complete tasks by evaluating all the evidence," including reports on functioning from the individual and third

---

[2] The *Walters* court noted that substantial deference was appropriate due in large part to an ALJ's unique observation of a witness's "demeanor and credibility." With the elimination of the term "credibility" in SSR 16-3p, it is questionable whether an ALJ's observations should be given any deference. Sixth Circuit decisions subsequent to SSR 16-3p, however, have retained the notion of deference to the ALJ in the symptom-consistency context, though they have not directly acknowledged the change. *See, e.g., Lipanye*, 802 F. App'x at 171 ("It is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements."); *Perry v. Comm'r of Soc. Sec.*, 734 F. App'x 335, 340 (6th Cir. 2018) ("[W]e are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying.") (quoting *Jones*, 336 F.3d at 475); *Mason v. Comm'r of Soc. Sec.*, No. 17-2407, 2018 WL 6133750, at *2 (6th Cir. Apr. 30, 2018) (same).

parties, "with an emphasis on how independently, appropriately, and effectively [the individual is] able to complete tasks on a sustained basis." 20 C.F.R. 404, Subpart P, App'x 1, § 12.00(C)(6)(c). This includes an assessment of "the kind and extent of supports [the individual] receive[s], the characteristics of any structured setting in which [the individual] spend[s] . . . time, and the effects of any treatment." 20 C.F.R. 404, Subpart P, App'x 1, § 12.00(D)(1)[3].

Plaintiff testified at the administrative hearing that he obtained a bachelor's degree and lived in a supportive environment while in college. (Tr. 47). He had an aide that helped him study and make social connections. (*Id.*). At the time of the hearing, he received assistance from a digital aid at his apartment that provides prompts for his daily activities like checking his mail and paying bills on time. (Tr. 47-48, 60-61). He also receives assistance from his parents. (Tr.

---

[3] The regulations identify the following examples of support an individual may receive:

a. You receive help from family members or other people who monitor your daily activities and help you to function. For example, family members administer your medications, remind you to eat, shop for you and pay your bills, or change their work hours so you are never home alone.

b. You participate in a special education or vocational training program, or a psychosocial rehabilitation day treatment or community support program, where you receive training in daily living and entry-level work skills.

c. You participate in a sheltered, supported, or transitional work program, or in a competitive employment setting with the help of a job coach or supervisor.

d. You receive comprehensive "24/7 wrap-around" mental health services while living in a group home or transitional housing, while participating in a semi-independent living program, or while living in individual housing (for example, your own home or apartment).

e. You live in a hospital or other institution with 24-hour care.

f. You receive assistance from a crisis response team, social workers, or community mental health workers who help you meet your physical needs, and who may also represent you in dealings with government or community social services.

g. You live alone and do not receive any psychosocial support(s); however, you have created a highly structured environment by eliminating all but minimally necessary contact with the world outside your living space.

20 C.F.R. 404, Subpart P, App'x 1, § 12.00(D)(1).

48, 60). He has a driver's license and drives himself to work and to doctor's appointments, using the GPS on his cellphone. (Tr. 48-49).

Although he has two friends with whom he socializes (Tr. 49), plaintiff testified to difficulty dealing with other people. (Tr. 50, 52, 55). He also believes that he would have difficulty working a full-time schedule due to stress. When he is around people, he "feels like a ballon inflating" and needs to stop for a break to calm down. (Tr. 54). He said at times during his part-time employment he had to call off work because he was overwhelmed. (*Id.*). He worked with his employers to make sure he was not scheduled four days in a row to prevent absences as he needed to "give [him]self a day to calm down." (Tr. 56-57). He reported taking additional breaks and calling his parents from work for support once or twice per week. (Tr. 57).

The ALJ considered plaintiff's testimony, but she found plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms not entirely consistent with" the evidence in the record. (Tr. 27). In considering the severity of plaintiff's symptoms, the ALJ considered plaintiff's daily activities, frequency and intensity of his symptoms, precipitating and aggravating factors, medications and other methods used to manage his symptoms, how those symptoms impact his functional limitations, and the support plaintiff received. Specifically, the ALJ noted that plaintiff obtained his bachelor's degree while living in a dormitory and utilizing an aide who provided reminders about chores and assignments. (*Id.*). His daily activities include driving to work, to the doctor, and to see his parents, even though he preferred to go the grocery with his parents. (*Id.*). He plays video games with his friends, watches YouTube videos, and writes stories for fun. (*Id.*). The ALJ acknowledged that one coworker quit because they had an argument with plaintiff and that plaintiff's prior part-time employment was terminated for making an inappropriate joke. (*Id.*). The ALJ specifically considered plaintiff's difficulty in

13

understanding subtext in conversation and that he tends to interact in a way that some people interpret as rudeness. (*Id.*). The ALJ further noted that plaintiff "has two cameras that monitor him for safety, particularly at night, and to offer him prompts on chores and other things that the person monitoring him observes." (*Id.*). The ALJ further noted that plaintiff "sits down with his father and goes over his bills and expenditures" and that his parents "help him with cleaning, dusting, and other homecare tasks." (*Id.*).

However, the ALJ further noted that medical records indicated that plaintiff's lethargy improved with medication corrections and that plaintiff was taking a Python programming course with help from his father. (Tr. 27-28, 30). The ALJ related plaintiff's history of semiskilled and unskilled work at near substantial gainful activity ("SGA") levels, which he sustained for long periods of time despite his impairments. (Tr. 30). The ALJ noted that while plaintiff "has some assistance with particular tasks from his parents, he generally has lived independently and engaged in ongoing significant work activity, in the past at SGA levels, which demonstrates significant[] functional abilities." (Tr. 31). By June 2021, both plaintiff and his job coach considered full-time work to be a reasonable option, although plaintiff was reluctant to take a full-time position because it would cause him to lose disability benefits. (Tr. 28). Plaintiff had "made significant progress in the functional life skills of caring for his apartment, cooking for himself, budgeting, family dinners, and doing yoga 30 minutes a week." (Tr. 31). By November 2022, plaintiff reported enjoying his job at a senior facility, working five hours per day, five days per week. (Tr. 29).

Based on the evidence in the record, the ALJ recognized challenges associated with plaintiff's lifelong autism spectrum disorder as well as medically-managed depression and anxiety. (Tr. 30). In formulating the RFC, the ALJ limited pace to accommodate plaintiff's

14

ADHD and occasional medication side effects and limited both the frequency and the nature of plaintiff's social interactions in response to social challenges related to autism and anxiety. The ALJ also limited adapting to changes "given his concrete thinking at times and reports of some stress with changes in routine." (*Id.*).

While a "plaintiff's ability to engage in daily activities does not establish *ipso facto* that [he] is able to engage in gainful activity 40 hours per week[,]" *Barnhorst v. Comm'r of Soc. Sec.*, No. 1:10-cv-526, 2011 WL 3811462, at *16 (S.D. Ohio Aug. 5, 2011), *report and recommendation adopted*, 2011 WL 3812639 (S.D. Ohio Aug. 26, 2011), "the ALJ may consider the claimant's testimony of limitations in light of other evidence of the claimant's ability to perform other tasks. . . ." *Simpson v. Comm'r of Soc. Sec*, No. 1:14-cv-801, 2016 WL 74420, at *10 (S.D. Ohio Jan. 6, 2016) (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001)) (remaining citations omitted). Plaintiff argues the ALJ overstated his activities of daily living, including ongoing part-time employment, but the ALJ properly considered this evidence as one factor in evaluating plaintiff's alleged symptom severity. *Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013). As described above, the ALJ thoroughly discussed plaintiff's subjective complaints, the objective evidence, medication, treatment, and daily activities in her symptom-severity analysis. Therefore, her symptom-severity analysis is supported by substantial evidence and supports the RFC finding in this case. Plaintiff's request for a Sentence Four remand should be denied.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's statement of errors (Doc. 12) be **OVERRULED** and the Commissioner's non-disability finding be **AFFIRMED**.

2. Judgment be entered in favor of the Commissioner and this case be closed on the docket of the Court.

Date: 12/6/2024

_____
Karen L. Litkovitz
Chief United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN J.,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 2:24-cv-461
Watson, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).